**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------- X
HU HOLDINGS, LLC,                                       :
                                                        :
                        Plaintiff,                      :
                                                        :       Civil Action No. 15-CV-9201
            - against -                                 :
                                                        :
SWEET EATS, LLC, WESTON BURRESS,                        :
and BRIDGET BURRESS,                                    :
                                                        :
                        Defendants.                     :
------------------------------------------------------- X
```

## COMPLAINT

Plaintiff, Hu Holdings, LLC ("HU"), by and through its attorneys, Lackenbach Siegel, LLP, for its complaint against Defendant, Sweet Eats, LLC ("Sweet"), Weston Burress ("Weston") and Bridget Anderson Burress ("Bridget") (Weston and Bridget collectively, the "Burresses" and all collectively "Defendants"), hereby alleges as follows:

## NATURE OF ACTION

1. In this action, HU seeks injunctive relief, lost profits, damages and attorneys' fees for Defendants' acts of willful trade dress infringement, false designation of origin, false descriptions, and unfair competition, pursuant to the Lanham Act, 15 U.S.C. §§ 1051 *et seq*., and trade dress infringement and dilution, deceptive acts and practices, injury to business reputation and dilution, and unfair competition under the common law and statutes of the State of New York.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, and 1367.

3.      The actions of Defendants complained of in this Complaint have been and continue to be committed within the Southern District of New York.

4.      Upon information and belief, Sweet is a limited liability company organized and existing under the laws of the State of New York, with its place of business in New York.

5.      Upon information and belief, Weston is a resident of New York and/or maintains a place of business in New York.

6.      Upon information and belief, Bridget is a resident of New York and/or maintains a place of business in New York.

7.      Upon information and belief Defendants reside, contract to supply goods and/or services, and/or transact business in New York and/or within this judicial district; and the tortious acts of Defendants complained of in this Complaint, including, without limitation, the willful and illegitimate use of HU's trade dress and goodwill, have caused harm to HU within this judicial district.  Accordingly, personal jurisdiction exists over Defendants pursuant to CPLR §§ 301 and 302.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391.

**THE PARTIES**

9.      HU is a limited liability company organized and existing under the laws of the State of New York, having its principal place of business at 78 5th Avenue, New York, New York, 10011.

10.      Upon information and belief, Sweet is a limited liability company organized and existing under the laws of the State of New York, having its principal place of business at 3 Hampstead Place, # 204, Saratoga Springs, New York 12866.

11.      Upon information and belief, the Buresses have a home address located in the state of New York and are the operating/directing individuals of Sweet.

12.      Upon information and belief, the Buresses are the directors and/or principals of Sweet and have aided, abetted, controlled, actively directed and caused Sweet to commit the acts complained of herein as the alter ego of Sweet.

**FACTUAL ALLEGATIONS**

13.      HU opened and began operating in 2012.

14.      HU offers both restaurant services (for eat in or take out) and the sale of various food and beverage products at retail.

15.      HU's branded goods are sold at its main location, as well as more than 200 retail locations throughout New York, including New York City, Long Island, and Connecticut, including Whole Foods and Fairway.  HU's branded goods are also sold throughout the United States via on-line sales.

16.      HU focuses on the preparation and sale of quality food, using only the finest ingredients available.

17.     HU has adopted and follows a "preindustrial" philosophy, wherein it strives to use ingredients that are as unprocessed as possible.   Many of its products are compatible with "paleo" and "primal" diets.

18.     Since opening, HU has become a critical and popular success at both its physical location and in the worldwide social media realm. HU has become a destination restaurant for New Yorkers and travelers from across the country and around the world, in search of healthy and delicious food.

**HU's Trade Dress**

19.     Among HU's products are its line of "Paleo | Vegan" chocolate bars (HU's Bars").   HU's Bars are free of refined sugar, gluten, dairy, emulsifiers, stabilizers, soy and GMO's.   Instead of cane sugar or other refined sugars, HU uses organic coconut sugar.

20.     At the time of the introduction of HU's Bars, HU was not aware of any other Paleo or Vegan chocolate bars, and the recipes, formulas, and methodologies used in connection with HU's bars were all developed at the considerable investment and effort of HU.

21.     HU has been selling HU's Bars continuously for nearly three years, during which time Hu's Bars have become some of HU's most popular and successful products.

22.     HU's Bars are, and have always been, sold in distinctive packaging.

23.     The overall look and feel of the packaging for HU's Bars shall be referred to as "HU's Trade Dress" or the "Trade Dress."

24.     Contributing to the Trade Dress and for purposes of permitting the Court to analyze the Trade Dress and issue appropriate injunctive relief (but without limiting the legal definition or breadth of the Trade Dress, HU's Trade Dress includes the following elements, without limitation, which contribute to its overall look and feel: HU's Bars are encased in

4

natural-colored wrapping vessels.  Dark labels, nearly the size of the chocolate bars, are placed on the tops of the packages.  The printing on the labels is generally white and printed such that the labels are viewed vertically.  The HU name and logo appear at the top center, under which the description or flavor of the bars is printed, under which the simple explanation of the products is listed, *e.g.,* "Chocolate Bar."  Under the description is a "PALEO | VEGAN" designation.  And beneath this is a statement marketing what the products do not contain.  Such statements include that the products do not contain various items such as GMO, emulsifiers, gluten, refined sugar and/or soy (lecithin).

25.    To maintain the same look and feel of HU's Trade Dress, when the products are displayed for sale on the shelf, HU packs and ships HU's Bars in simple cardboard boxes of essentially the same colors as HU's Trade Dress.  HU's Bars are packaged and the boxes are configured with perforations, such that the boxes can be torn open and the products displayed on the shelf in the boxes.

26.    The Trade Dress is best exemplified through visual representation, as follows:

 

27.    HU's Trade Dress is inherently distinctive and strong.

28.    Because of HU's extensive use and promotions of HU's Trade Dress, and in light of the media coverage and notoriety pertaining to HU's goods, services, HU's Bars and HU's Trade Dress, the Trade Dress has become distinctive, indicates a single source of origin for HU's Bars, and has acquired a secondary meaning.

**<u>Defendants' Infringing Activities</u>**

29.    HU recently became aware that Sweet was selling a line of "PALEO | VEGAN" chocolate bars under the "Sweet Eats Artisan Chocolate Co." name ("Sweet's Bars").

30.     The labeling on Sweet's Bars stated that Sweet Eats' chocolate bars are free of refined sugar, gluten, dairy, emulsifiers, soy and GMO's.  Instead of cane sugar or other refined sugars, Sweet Eats uses organic coconut sugar.

31.     Sweet's Bars were sold in specific packaging.  Sweet's Bars were encased in simulated natural-colored wrapping vessels.  Dark labels, nearly the size of the chocolate bars, were printed on the top of the packages.  The printing on the labels was generally white and printed such that the labels are viewed vertically.  The Sweet Eats name and logo appeared at the top center, under which the description or flavor of the bars was printed, under which the simple explanation of the products was listed, *e.g.,* "Milk Chocolate Bar."  Under the description was a "PALEO | VEGAN" designation.  And beneath this was a statement marketing what the products do not contain.  Such statements include that the products do not contain various items such as GMO, emulsifiers, gluten, refined sugar and/or soy (lecithin) (all collectively referred to as Sweet's First Infringing Trade Dress").

32.     Upon information and belief, Sweet adopted Sweet's First Infringing Trade Dress after using different packaging.

33.     In an apparent attempt to maintain the same look and feel of Sweet's First Infringing Trade Dress, when Sweet's Bars are displayed for sale on the shelf, Sweet packs and ships its chocolate bars in simple cardboard boxes of essentially the same color as the packaging. Sweet's Bars are packaged and the boxes configured with perforations such that the boxes can be torn open and the products be displayed on the shelf in the boxes.

34.     The First Infringing Trade Dress is best exemplified through visual

representation, as follows:

 

35.     Without the authorization and/or consent of HU, and after HU built up extensive

and valuable business and goodwill in connection with HU's Trade Dress, Defendants

commenced to use the First Infringing Trade Dress.

36.     A side by side comparison shows the similarities between HU's Trade Dress and Sweet's First Infringing Trade Dress:





37.     Upon information and belief, Defendants were aware of HU and HU's use of HU's Trade Dress in connection with HU's Bars at the time Defendants adopted and began to use the First Infringing Trade Dress.

9

38.     Upon information and belief, Defendants adopted Sweet's First Infringing Trade Dress with the intent to deceive consumers and to cause confusion among purchasers, for the purpose of benefitting from the good will and public recognition associated with HU's Trade Dress and diverting sales from HU to Defendants.

39.     On or about August 14, 2015, HU, by and through its attorneys, sent a cease and desist letter to Defendants regarding Sweet's First Infringing Trade Dress.

40.     Defendants, through counsel, responded to the August 14, 2015 cease and desist letter and agreed to change Sweet's First Infringing Trade Dress. The responding letter, however, did not provide examples of, or otherwise detail how the First Infringing Trade Dress would be changed.

41.     Through Sweet's posting on social media and the Internet generally, HU learned that Sweet made only minimal changes to the First Infringing Trade Dress.

42.     Sweet's new packaging maintained the same overall look and feel, including the same basic color scheme, including a simulated natural craft brown wrapper with a printed, darker brown label, and a vertical presentation. The "paleo and vegan" designation was retained, though slightly modified, as were the listings of ingredients not included, e.g., "dairy free" and "no refined sugars." The "new" packaging shall be referred to as the "Second Infringing Trade Dress."

43.    The Second Infringing Trade Dress is best exemplified through visual representation, as follows:



44.    On or around October 21, 2015, HU sent a second cease and desist letter to Defendants regarding the Second Infringing Trade Dress.

45.    Defendants, through counsel, responded to the October 21, 2015 cease and desist letter stating that, *inter alia¸* Defendants would not make any further changes to the Second Infringing Trade Dress.

46.    HU and Defendants are or will be engaged in the business of providing similar products to the same class of customers, through the same or similar channels of trade.  Not only do both parties sell chocolate bars, but both parties sell dairy free, vegan / paleo chocolates bars that use organic coconut sugar in place of refined sugar and/or corn syrup.

47.     The aforementioned acts of Defendants have caused and will continue to cause actual confusion and a likelihood of confusion in the minds of the trade and the public, and will damage HU's reputation in connection with its Trade Dress.

**COUNT I**
**TRADE DRESS INFRINGEMENT, FALSE DESIGNATION OF ORIGIN,**
**FALSE DESCRIPTION, AND UNFAIR COMPETITION LANHAM ACT § 43(a)**

48.     HU repeats and realleges each and every allegation contained in the prior paragraphs hereto, and the same are incorporated herein and made a part hereof.

49.     HU's Trade Dress is inherently distinctive.

50.     HU's Trade Dress has acquired distinctiveness and secondary meaning.

51.     HU's Trade Dress is not functional.

52.     HU offers for sale and sells HU's Bars under and/or in connection with HU's Trade Dress.

53.     Defendants' offered for sale and sold, and upon information and belief, certain of Defendants' customers continue to offer for sale and sell, Sweet's Bars using the First Infringing Trade Dress.

54.     Defendants' First Infringing Trade Dress is confusingly similar to HU's Trade Dress.

55.     Defendants' First Infringing Trade Dress infringes HU's Trade Dress.

56.     The acts and conduct of Defendants are willful, unfair, untrue and deceptive, in that they intend to mislead, deceive and confuse, and have had and continued to have the result of misleading, deceiving and confusing the public to believe that Defendants and/or their First Infringing Trade Dress are affiliated with, sponsored and/or controlled by HU.  As a

12

consequence, Defendants attempt to trade upon, and gain public acceptance and other benefits from HU's favorable reputation, which has accordingly, been placed at risk by Defendants' illegal acts and conduct.

57.     The acts of Defendants constitute infringement of HU's Trade Dress, and Defendants' use, marketing and/or sale of products using the First Infringing Trade Dress create a false designation of origin and false representations, and constitute unfair competition, all by inducing the erroneous belief that Defendants and/or Defendants' Sweet's Bars using the First Infringing Trade Dress are in some manner affiliated with, originate from, or are sponsored by HU, and by misrepresenting the nature and/or origin of Sweet's Bars are all in violation of Lanham Act § 43(a), 15 U.S.C. § 1125(a).

58.     Upon information and belief, the Defendants' infringing acts were taken willfully and intentionally, with Defendants' prior knowledge of HU and HU's Trade Dress, and with the specific intent to cause confusion among consumers and to otherwise take advantage of HU's reputation and good will.

59.     The acts of Defendants have caused irreparable harm and damage to HU and will continue to cause irreparable harm to HU, and have caused and will continue to cause HU to suffer monetary damage in an amount thus far not determined.

60.     HU has no adequate remedy at law for the injury alleged in this count, and said injury is, in part, intangible in nature and not capable of being fully measured or valued entirely in terms of monetary damages.

61.     Notwithstanding the inadequacy of and the difficulty of presently fully ascertaining HU's monetary damages caused by Defendants' wrongful conduct, HU is informed and believes and, based upon such information and belief, alleges that said conduct has resulted

in irreparable, direct and proximate damages to HU.  HU seeks leave of this Court to amend its complaint to allege the full nature and extent of said monetary damages if, when and to the extent the damages are ascertained.

**COUNT II**
**COMMON LAW INFRINGEMENT AND UNFAIR COMPETITION**

62.     HU repeats and realleges each allegation contained in the prior paragraphs hereto and the same are incorporated herein and made a part hereof.

63.     HU's Trade Dress is inherently distinctive.

64.     HU's Trade Dress has acquired distinctiveness and a secondary meaning.

65.     Upon information and belief, the acts of Defendants were committed willfully, intentionally, and with bad faith.

66.     Upon information and belief, with Defendants' prior knowledge of HU and its Trade Dress, Defendants intentionally appropriated HU's Trade Dress with the intent of causing confusion, mistake and deception as to the source of its goods sold using the First Infringing Trade Dress, with the intent to palm-off its goods as those of HU and to misappropriate the efforts and good will of HU.

67.     The acts of Defendants have created a likelihood of confusion.

68.     The acts of Defendants, including Defendants' use of the First Infringing Trade Dress, constitute trade dress infringement, in violation of the common law of the State of New York.

69.     The acts of Defendants, including Defendants' use of the First Infringing Trade Dress, constitute unfair competition, in violation of the common law of the State of New York.

70.     The foregoing acts of Defendants have injured and will continue to injure HU, by depriving it of sales of its genuine goods and services, by injuring its business reputation, and by passing off Defendants' goods as those of HU's, all in violation of the common law of the State of New York.

71.     Defendants' acts have caused irreparable harm and damage to HU and have caused HU monetary damage in an amount thus far not determined, for which HU is entitled to its actual damages, Defendants' profits, punitive damages, attorneys' fees and costs.

72.     HU has no adequate remedy at law.

**Count III**
**LIKELIHOOD OF INJURY TO BUSINESS REPUTATION OR DILUTION**
**(NY Gen. Bus. Law § 360-l)**

73.     HU repeats and realleges each allegation contained in the prior paragraphs hereto and the same are incorporated herein and made a part hereof.

74.     The forgoing acts of Defendants have created and will create a likelihood of injury to the public image and business reputation of HU.

75.     The forgoing acts of Defendants have created and will create a likelihood of dilution of HU's Trade Dress.

76.     HU's Trade Dress is extremely strong, inherently strong and distinctive, and has acquired distinctiveness and a secondary meaning.

77.     Defendants appropriated HU's Trade Dress by using the First Infringing Trade Dress, which is confusingly similar to HU's Trade Dress.

78.     The forgoing acts of Defendants will create a likelihood of dilution by blurring, in that Defendants' use of their First Infringing Trade Dress will cause HU's Trade Dress to lose its ability to serve as a unique identifier of HU's goods and services.

79.     Based on the foregoing, Defendants have violated New York Gen. Bus. Law § 360-l, for which HU is entitled to injunctive relief.

## COUNT IV
## TRADE DRESS INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, FALSE DESCRIPTION, AND UNFAIR COMPETITION LANHAM ACT § 43(a)

80.     HU repeats and realleges each and every allegation contained in the prior paragraphs hereto, and the same are incorporated herein and made a part hereof.

81.     HU's Trade Dress is inherently distinctive.

82.     HU's Trade Dress has acquired distinctiveness and secondary meaning.

83.     HU's Trade Dress is not functional.

84.     HU offers for sale and sells HU's Bars under and/or in connection with HU's Trade Dress.

85.     Defendants' offered for sale and sold, and upon information and belief, certain of Defendants' customers continue to offer for sale and sell, Sweet's Bars using the Second Infringing Trade Dress.

86.     Defendants' Second Infringing Trade Dress is confusingly similar to HU's Trade Dress.

87.     Defendants' Second Infringing Trade Dress infringes HU's Trade Dress.

88.     The acts and conduct of Defendants are willful, unfair, untrue and deceptive, in that they intend to mislead, deceive and confuse, and have had and continued to have the result of misleading, deceiving and confusing the public to believe that Defendants and/or their Second Infringing Trade Dress are affiliated with, sponsored and/or controlled by HU.  As a consequence, Defendants attempt to trade upon, and gain public acceptance and other benefits from HU's favorable reputation, which has accordingly, been placed at risk by Defendants' illegal acts and conduct.

89.     The acts of Defendants constitute infringement of HU's Trade Dress, and Defendants' use, marketing and/or sale of products using the Second Infringing Trade Dress create a false designation of origin and false representations, and constitute unfair competition, all by inducing the erroneous belief that Defendants and/or Defendants' Sweet's Bars using the Second Infringing Trade Dress are in some manner affiliated with, originate from, or are sponsored by HU, and by misrepresenting the nature and/or origin of Sweet's Bars are all in violation of Lanham Act § 43(a), 15 U.S.C. § 1125(a).

90.     Upon information and belief, the Defendants' infringing acts were taken willfully and intentionally, with Defendants' prior knowledge of HU and HU's Trade Dress, and with the specific intent to cause confusion among consumers and to otherwise take advantage of HU's reputation and good will.

91.     The acts of Defendants have caused irreparable harm and damage to HU and will continue to cause irreparable harm to HU, and have caused and will continue to cause HU to suffer monetary damage in an amount thus far not determined.

92.     HU has no adequate remedy at law for the injury alleged in this count, and said injury is, in part, intangible in nature and not capable of being fully measured or valued entirely in terms of monetary damages.

93.     Notwithstanding the inadequacy of and the difficulty of presently fully ascertaining HU's monetary damages caused by Defendants' wrongful conduct, HU is informed and believes and, based upon such information and belief, alleges that said conduct has resulted in irreparable, direct and proximate damages to HU.  HU seeks leave of this Court to amend its complaint to allege the full nature and extent of said monetary damages if, when and to the extent the damages are ascertained.

## COUNT V
## COMMON LAW INFRINGEMENT AND UNFAIR COMPETITION

94.     HU repeats and realleges each allegation contained in the prior paragraphs hereto and the same are incorporated herein and made a part hereof.

95.     HU's Trade Dress is inherently distinctive.

96.     HU's Trade Dress has acquired distinctiveness and a secondary meaning.

97.     Upon information and belief, the acts of Defendants were committed willfully, intentionally, and with bad faith.

98.     Upon information and belief, with Defendants' prior knowledge of HU and its Trade Dress, Defendants intentionally appropriated HU's Trade Dress with the intent of causing confusion, mistake and deception as to the source of its goods sold using the Second Infringing Trade Dress, with the intent to palm-off its goods as those of HU's and to misappropriate the efforts and good will of HU.

99.     The acts of Defendants have created a likelihood of confusion.

18

100.    The acts of Defendants, including Defendants' use of the Second Infringing Trade Dress, constitute trade dress infringement, in violation of the common law of the State of New York.

101.    The acts of Defendants, including Defendants' use of the Second Infringing Trade Dress, constitute unfair competition, in violation of the common law of the State of New York.

102.    The foregoing acts of Defendants have injured and will continue to injure HU, by depriving it of sales of its genuine goods and services, by injuring its business reputation, and by passing off Defendants' goods as those of HU's, all in violation of the common law of the State of New York.

103.    Defendants' acts have caused irreparable harm and damage to HU and have caused HU monetary damage in an amount thus far not determined, for which HU is entitled to its actual damages, Defendants' profits, punitive damages, attorneys' fees and costs.

104.    HU has no adequate remedy at law.

**Count VI**
**LIKELIHOOD OF INJURY TO BUSINESS REPUTATION OR DILUTION**
**(NY Gen. Bus. Law § 360-l)**

105.    HU repeats and realleges each allegation contained in the prior paragraphs hereto and the same are incorporated herein and made a part hereof.

106.    The forgoing acts of Defendants have created and will create a likelihood of injury to the public image and business reputation of HU.

107.    The forgoing acts of Defendants have created and will create a likelihood of dilution of HU's Trade Dress.

19

108.     HU's Trade Dress is extremely strong, inherently strong and distinctive, and has acquired distinctiveness and a secondary meaning.

109.     Defendants appropriated HU's Trade Dress by using the Second Infringing Trade Dress, which is confusingly similar to HU's Trade Dress.

110.     The forgoing acts of Defendants will create a likelihood of dilution by blurring, in that Defendants' use of their Second Infringing Trade Dress will cause HU's Trade Dress to lose its ability to serve as a unique identifier of HU's goods and services.

111.     Based on the foregoing, Defendants have violated New York Gen. Bus. Law § 360-l, for which HU is entitled to injunctive relief.

**WHEREFORE**, HU demands judgment against Defendants as follows:

A.     That Defendants' conduct serves to infringe HU's Trade Dress, falsely designate the origin of Defendants' goods, falsely describe such goods, and unfairly compete with HU, all in violation of Lanham Act § 43(a), 15 U.S.C. § 1125(a).

B.     That Defendants' conduct constitutes trade dress infringement and unfair competition under the common law of the State of New York.

C.     That Defendants' conduct violates the provisions of New York Gen. Bus. Law § 360-l and constitutes trade dress infringement and dilution and injury to HU's business reputation.

D.     That Defendants' and its agents, officers, directors, servants, employees, attorneys, their successors and assigns, and all others in active concert or participation with Defendants' be preliminarily and permanently enjoined from directly or indirectly:

i.      Using HU's Trade Dress, Sweet's First and Second Infringring Tradedress or any other trade dress which is similar to or are colorable imitations of HU's Trade Dress;

ii.     Committing any act which, in and of itself, or from the manner or under the circumstances in which it is done amounts to false designation of origin, false description or false representation of Defendants' goods and services;

iii.    Otherwise unfairly competing with HU or committing dilution, infringement and/or injury to/of HU's rights.

E.      That the Court issue an Order directing Defendants to file with the Court and serve on HU, within thirty (30) days after the service on Defendants of such injunctions, a report in writing and under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction.

F.      That the Court award judgment in favor of HU for the damages sustained by HU and the profits made by Defendants as a result of Defendants' wrongful conduct.

G.      That the Court award judgment in favor of HU in the amount of treble damages.

H.      That the Court award judgment against Defendants for the full costs of this action, including HU's reasonable attorneys' fees.

I.      That the Court award to HU punitive damages sufficient to deter Defendants from committing such willful acts of infringement in the future.

J.      That this Court require a full and complete accounting of all monies received by Defendants as a result of the sales under the First and Second Infringing Trade Dress.

K.     For interest on all amounts found to be due to HU from Defendants, at the prevailing rate, from the date said amounts or any part thereof became or become due.

L.     That the Court require Defendants to notify Defendants' commercial associates, suppliers and customers of said Order.

M.     That the Court order such other, further and different relief as the nature of this action may require and that the Court may deem just and proper.

N.     That the Court retain jurisdiction of this action for the purpose of enabling HU to apply to the Court, at any time, for such further orders and directions as may be necessary or appropriate for the interpretation or execution of any order entered in this action, for the modification of any such order, for the enforcement or compliance therewith and for the punishment of any violations thereof.


## **Jury Trial**

HU requests that the matters set forth herein be tried by a jury.


Dated: Scarsdale, New York                           Respectfully submitted,
      November 23, 2015

                                                 **LACKENBACH SIEGEL LLP**


                             By:_____*/s/ Robert B. Golden*_____
                                   Robert B. Golden (RG 6157)
                                   Attorneys for HU Holdings, LLC
                                   One Chase Road
                                   Lackenbach Siegel Bldg., Penthouse Fl.
                                   Scarsdale, New York 10583
                                   (914) 723-4300
                                   (914) 725-5674 (fax)